IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DIANA C. KUNKLE,                              )    Civil No.: 6:14-cv-01605-JE
                                              )
                  Plaintiff,                  )     FINDINGS AND
                                              )    RECOMMENDATION
         v.                                   )
                                              )
CAROLYN W. COLVIN,                            )
Acting Commissioner of Social Security,       )
                                              )
                  Defendant.                  )
_____      )


        Kathryn Tassinari
        Mark A. Manning
        Harder Wells Baron & Manning, PC
        474 Willamette Street, Suite 200
        Eugene, OR 97401

                Attorneys for Plaintiff


        Billy J. Williams, Acting U.S. Attorney
        Janice Hebert, Asst. U.S. Attorney
        1000 S.W. 3rd Avenue, Suite 600
        Portland, OR 97204


FINDINGS AND RECOMMENDATION – 1

Martha Boden
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

      Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Diana Kunkle brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Disability Income Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff seeks a remand for further proceedings.

For the reasons set out below, the Commissioner's decision should be reversed and this action should be remanded to the Agency for an immediate award of benefits.

## **Procedural Background**

Plaintiff filed an application for a period of disability and for DIB on December 5, 2011, alleging she had been disabled since September 14, 2011.

After her claims were denied initially and upon reconsideration, Plaintiff timely requested an administrative hearing.

On August 23, 2013, a hearing was held before Administrative Law Judge (ALJ) Elizabeth Watson. Plaintiff and Kay Wise, a Vocational Expert (VE), testified at the hearing. Plaintiff was represented by counsel.

In a decision dated September 11, 2013, ALJ Watson found that Plaintiff was not disabled within the meaning of the Act.

FINDINGS AND RECOMMENDATION – 2

On August 22, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1977 and was 36 years old at the time of the ALJ's decision. Tr. 137. She has an associate degree and was certified as a Certified Nursing Assistant (CNA). Tr. 41. She has past relevant work as a collector, an in-home care giver and a hospital ward clerk. Tr. 68.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the

FINDINGS AND RECOMMENDATION – 3

presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## Medical Record and Testimony

The court has carefully reviewed the medical record and testimony and the parties are familiar with both. Accordingly, the details of that evidence will be set out below only as they are relevant to the issues before the court.

## ALJ's Decision

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2015.

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the date of her alleged onset of disability on September 14, 2011 through the date last insured.

At the second step, the ALJ found that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease, sacroiliac (SI) joint inflammation, migraine, and reactive depression. Tr. 13.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). She found that Plaintiff retained the capacity to lift 15 pounds occasionally and to lift and carry up to 10 pounds frequently. She could stand or walk for about six hours and sit for about six hours in an eight hour work day but should be allowed to alternate sitting or standing positions as needed throughout the day while remaining on task. Plaintiff could occasionally climb ramps or stairs and stoop, kneel, crouch or crawl. She should never climb ropes, ladders or scaffolds and should avoid all exposure to operational control of moving machinery, unprotected heights and

FINDINGS AND RECOMMENDATION – 5

hazardous machinery. Plaintiff was limited to only occasional interaction with the public,
coworkers and supervisors. On a regular basis, Plaintiff would be off task outside normal work
breaks less than 10% of the time. Tr. 15. In determining Plaintiff's RFC, the ALJ found that
Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms
were not entirely credible. Tr. 16.

At the fourth step of her disability analysis, the ALJ found that Plaintiff was unable to
perform any of her past relevant work.

At the fifth step, the ALJ found that Plaintiff could perform other jobs that existed in
substantial numbers in the national economy. Based upon testimony from the VE, the ALJ cited
label coder/marker, data examination clerk, and non-government mail clerk/sorter as examples of
such work. Having concluded that Plaintiff could perform other work, the ALJ found that
Plaintiff had not been under a disability within the meaning of the Act from September 14, 2011
through the date of her decision. Tr. 20.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by
reason of any medically determinable physical or mental impairment which . . . has lasted or can
be expected to last for a continuous period of not less than 12 months." 42 U.S.C.
§ 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala,
66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears
the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991),
and bears the burden of establishing that a claimant can perform "other work" at Step Five of the
disability analysis process.  Tackett, 180 F.3d at 1098.

FINDINGS AND RECOMMENDATION – 6

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

### I. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons, supported by substantial evidence, for finding that her subjective symptom allegations were not fully credible.

Plaintiff testified that she has lower back pain that had worsened over time. She experiences back pain and spasms every day and pain in her left hip three to four times a week. Tr. 51. Activities like walking, bending over, housecleaning or sleeping "wrong" can bring on the pain. She can sit for maybe an hour before she begins to experience pain and then must shift position. She lies down three to four times a day and sometimes all day due to her back pain. Tr. 61. She can stand no more than about 20 minutes before she starts feeling pain in her back and she can walk for about ten minutes. Tr. 64-65. She has been trying to take walks with her mother at night. They walk about four blocks and "it's pretty painful." Tr. 65. Plaintiff plans her daily

activities, such as housework, around her pain and takes breaks during the day so that the pain does not intensify. Tr. 62.

## A.  Standards

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted).

Pursuant to Social Security Ruling ("SSR") 16-3p, available at 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p), the ALJ is no longer tasked with making an overarching credibility determination, and must assess instead whether a claimant's subjective symptom statements are consistent with the record as a whole. The ALJ's decision in this case was issued well before SSR 16-3p became effective and there is an absence of binding precedent interpreting this new ruling or addressing whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retrospectively to a 2013 ALJ decision).

However, SSR 16-3p is a clarification of sub-regulatory policy, rather than a new policy. SSR 16-3p, at *1; also compare SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). In Andre v. Colvin, 6:14-cv-02009-JE (D.Or. Oct. 13, 2016), I recently concluded that, for this reason,

FINDINGS AND RECOMMENDATION – 8

retroactive application of the new SSR is appropriate. [1] See Smolen, 80 F.3d at1281 n.1 ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993)) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively).[2]

The new SSR clarifies that "subjective symptom evaluation is not an examination of an individual's character." Id. In other words, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. Rather, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." Id. Thus, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" Id. at *9. Instead, the finding "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." Id.

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional

---

[1] Other recent District of Oregon SSA dispositions have also incorporated SSR 16-3p into the analytical framework for evaluating ALJ findings regarding subjective symptom testimony. See, e.g., Mesmer v. Colvin, No. 6:15-cv-00947-MC, available at 2016 WL 5339728 (D.Or. Sept. 23, 2016); Burnstad v. Colvin, No. 6:15-cv-00921-SI, available at 2016 WL 4134535 (D.Or. Aug. 2, 2016).

[2] In any event, the ALJ's reasoning here failed to meet either standard.

FINDINGS AND RECOMMENDATION – 9

limitations and restrictions due to pain or other symptoms." C.F.R. §404.1529(c). If substantial

evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited

by the ALJ are not correct. <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1162 (9th

Cir. 2008).

**B.  Analysis**

      Because Plaintiff's medically determinable impairments could reasonably be expected to

cause some degree of symptoms and there was no evidence of malingering, the ALJ was required

to provide clear and convincing reasons supported by substantial evidence for discounting

Plaintiff subjective symptom testimony.

      The ALJ found that "treatment notes showed some clinical evidence of functional limits

but not to the extent that all work activity would be precluded." She also noted that Plaintiff did

not stop working because of her disability and because her receipt of unemployment

compensation contemporaneously with her application for disability benefits "called into

question her allegations regarding the severity of her conditions." Tr. 16. [3] These are not clear

and convincing reasons for discounting Plaintiff's subjective symptom testimony and they are

not supported by substantial evidence in the record.

      The ALJ noted that in October 2011, treatment notes showed that Plaintiff appeared

uncomfortable to palpation of the lumbar spine and left SI joint but had normal deep tendon

---

[3] The Court notes that in her Response Brief the Commissioner advances the argument that the ALJ properly
discounted Plaintiff's testimony because it was inconsistent with her activities of daily living. As Plaintiff correctly
asserts, this was not a reason proffered by the ALJ in her decision.  Accordingly, the Court will not consider it as
part of its review. <u>See</u> Bray v. Commissioner, 554 F.3d 1219, 1225 (9th Cir.2009)("Long-standing principles of
administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the
ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.")(citations
omitted).

reflexes in the lower extremities and negative straight leg raising. Plaintiff was prescribed Naprosyn and Vicodin. The next month she exhibited decreased range of back motion but her medical provider made no change in treatment. Tr. 241, 16. The ALJ asserted that despite her allegations of daily back pain, Plaintiff was inconsistent in pursuing treatment and reported improvements in April, May and June of 2012. The ALJ also asserted that subsequent treatment records "did not show clinical evidence of worsening." Tr. 16.

Medical records from 2004 show MRI evidence of disc desiccation at L5-S1. In October 2011, Plaintiff presented for treatment of back pain that was debilitating on a daily basis. Tr. 240. Plaintiff's primary medical provider, Dr. LeBow, noted that her increase in symptomology was "entirely in keeping with the usual progression of the problem" and that "there certainly would not be improvement over time." Tr. 241. Dr. LeBow's treatment notes indicate that he did not view further imaging to be helpful and that he counseled Plaintiff regarding the need to go to a chronic pain management program. Id. Contrary to the Commissioner's argument, Plaintiff did return for a follow up appointment the next month. Although Dr. LeBow made no changes in her medication, he referred Plaintiff to a women's health specialist for evaluation of contributory causes to her back pain. Tr. 239, 247-249. The record reflects that Plaintiff returned to Dr. LeBow for assessment of her back pain in April and May of 2012. Although treatment notes from early 2012 indicate improvement on the narcotic regimen, they also show that, on examination, Plaintiff exhibited localized discomfort in the SI joint, "fairly discrete" tenderness in the left SI joint and more prominence to palpation. Although improved, Plaintiff's range of motion was performed "in a careful fashion." Tr. 261-64.

In July, 2012, Dr. LeBow noted exquisite tenderness in the left paralumbar musculature and "even more pain is elicited with palpation of the left SIJ." Tr. 392. Plaintiff ambulated with a

FINDINGS AND RECOMMENDATION – 11

very forward flexed position and wide-based gait. Id. Dr. LeBow noted the possibility that Plaintiff "may have true instability of the left sacroiliac joint," but that obtaining any imaging studies would be "virtually impossible" thus making it difficult to prove at that time. Id.

In November 2012 Plaintiff reported having more difficulty controlling her back pain on a day-to-day basis. Dr. LeBow noted she was moving stiffly and "as usual, she has decreased mobility for range of motion of her lumbar spine mainly because of discomfort." Tr. 380-81.

In March, 2013, Plaintiff reported to Dr. LeBow that her prescribed pain medication and Naprosyn combination barely kept her discomfort to a functional level and that performing activities of daily living or cleaning house "put her out of action for about a day." Tr. 374.

Based on my review of the record, I conclude that substantial evidence does not support the ALJ's findings that Plaintiff pursued only sporadic treatment and showed signs of improvement that were more than short-lived, or that the record shows no evidence of worsening. Furthermore, to the extent that the symptoms Plaintiff alleges might arguably be described as inconsistent with the objective medical record, the Ninth Circuit has expressly held that such inconsistency is not a proper basis for discounting a claimant's pain testimony. See, e.g., Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir.1990) (assertion that pain was "out of proportion to the medical evidence" not valid basis for discounting testimony "since it is the very nature of excess pain to be out of proportion to the medical evidence").

The ALJ also discounted Plaintiff's subjective symptom testimony because Plaintiff did not stop working because of her disability. The ALJ noted that Plaintiff was able to maintain employment with her last employer despite absences related to her condition and that Plaintiff had been discharged for failing to meet quotas. Tr. 17. Plaintiff argues that the fact that she was not terminated because of her medical condition is not inconsistent with her claim of disability.

FINDINGS AND RECOMMENDATION – 12

I agree.  The record reflects that Plaintiff was terminated from her employment in August of 2011. Tr. 46. In her application for benefits she alleged an onset date of September 14, 2011. Tr. 137. Plaintiff presented for treatment of debilitating daily back pain in October 2011 and, as discussed above, the record reflects that Plaintiff's condition worsened over time. Finally, the circumstances under which Plaintiff had stopped working for her last employer are of questionable relevance, given that the ALJ's own assessment of her functional capacity precluded performance of the work that she had performed for that employer. Under these circumstances, the fact that she was terminated for non-medical reasons is not inconsistent with her allegations of pain.

Lastly, the ALJ supported her evaluation of Plaintiff's subjective symptom testimony by noting that Plaintiff received unemployment compensation contemporaneously with her application for disability benefits. The Commissioner argues that "Plaintiff testified that, as an unemployment beneficiary in Oregon, she understood that she must accept full time work if offered to her." Def. Brief at 7, Tr. 52. The Commissioner mischaracterizes Plaintiff's testimony and the record does not establish that Plaintiff asserted that she was available for full-time employment.  See, Carmickle, 533 F.3d at 1161–62. In any event, the ALJ herself relied only on Plaintiff's receipt of unemployment benefits and the fact that she sought "office work, light collections, and entry level office work" as inconsistent with her symptom allegations. She did not reference any indication by Plaintiff that she could or would accept full-time work or that Plaintiff, as the Commissioner argues, "believed she was capable of working fulltime." Tr. 17, Def. Brief at 7.

Under Oregon's specific unemployment eligibility rules, a person with a disability may apply for unemployment benefits as long as she is able to perform "some work." See, Oregon

Administrative Rule 471-030-0036(2)(b). Plaintiff's receipt of benefits under these rules was not a clear and convincing reason to discount Plaintiff's testimony.

In short, the ALJ's stated reasons for finding that the record did not support Plaintiff's subjective symptom statements, or were a reason to find her "not entirely credible," were not clear and convincing reasons supported by substantial evidence. The ALJ improperly rejected Plaintiff's testimony and the error was not harmless. Accordingly, remand is warranted.

## II.  <u>Evaluating Medical Opinion</u>

As noted above, Plaintiff contends that the ALJ gave legally insufficient reasons for failing to credit the opinion of her primary treating physician, Dr. John LeBow.

Dr. LeBow became Plaintiff's treating physician in 2000. Tr. 255. In a letter to Plaintiff's attorney dated May 8, 2012, he described Plaintiff as suffering "recurrent episodes of debilitating back pain." Id. He indicated that "all modalities" of treatment had been tried variously and noted that the different medications that had been utilized all "have the potential to impair her abilities to work secondary to drowsiness." Dr. LeBow opined:

> As to physical abilities, when the patient is not having an episode, she can perform normally for stand, walk, and sit, however, I would definitely limit her to a 15 lb. wt. limit only on an occasional basis. Of course, during an episode, she can't stand for more than 10-15 minutes at any one time, can sit for no more than 30 minutes with frequent needs to lie down as needed.

Tr. 255. Dr. LeBow elaborated that "[d]uring the episodes, she is debilitated to the point she needs to sit or lie almost continually and obviously not capable of work in the normal venue." Id. He further opined that:

> Given the pattern that I've observed over the years, I would speculate that, on average, she would be incapacitated from work for 3 days/month and would be in need of some limiting criteria, e.g. half-time status, for at least 2 additional days/month.

Id.

FINDINGS AND RECOMMENDATION – 14

The ALJ agreed with a State agency consulting physician's assessment of Dr. LeBow's opinion and discounted those portions of his opinion regarding Plaintiff's limitations during an episode of back pain. The ALJ gave Dr. LeBow's opinion only "little weight" because she found it "speculative" and inconsistent with the doctor's own treatment notes.

**A. Standards**

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992).

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. Andrews, 53 F.3d at 1043. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir.1995).

**B. Analysis**

The Commissioner argues that the ALJ legitimately discounted Dr. LeBow's opinion as speculative because the doctor, in using the word "speculate," was admitting that he was only guessing about Plaintiff's workplace limitations. Def. Brief at 10. The Commissioner also asserts

that Dr. LeBow's chart notes do not support the level of incapacity he described in his May 2012 letter. The Commissioner's arguments are unpersuasive.

In finding Dr. LeBow's opinion inconsistent with his treatment records, the ALJ remarked that the doctor had not reported medication side effects, there was no mention of clinical signs to corroborate the level of severity indicated in his opinion and Plaintiff's complaints were sporadic. Tr. 18. First, as Plaintiff correctly notes, Dr. LeBow's letter indicated only that the medications that Plaintiff had been prescribed over the course of her treatment all had "the *potential* to impair her abilities to work secondary to drowsiness." Tr. 55 (emphasis added). Dr. LeBow did not write that Plaintiff was experiencing these side effects and Plaintiff herself does not claim that she is adversely affected. Tr. 255-56, Pl. Brief at 16.

As reflected in the discussion in Section I, supra, Plaintiff presented for treatment of debilitating daily back pain in October 2011 and her condition worsened over time. Dr. LeBow's treatment notes reflect that deterioration. See Tr. 239, 241, 374, 380-81, 385, 391-92. Also as discussed above, the record reflects that the ALJ mischaracterized Plaintiff's reports of disabling limitations as sporadic. As to clinical findings, Dr. LeBow's treatment records referenced MRI evidence of disc desiccation, muscle spasms of the paravertebral lumbar musculature, an S1 joint that was prominently painful to palpation, and his observations of Plaintiff's decreased range of motion and altered gait. Id. Under these circumstances, inconsistency with treatment records was not a legally sufficient reason for rejecting Dr. LeBow's opinion.

Next, as Plaintiff correctly notes, the portion of Dr. LeBow's opinion describing Plaintiff's limitations during an episode contained no speculative language. Second, in context, Dr. LeBow's statement "speculating" as to the number of times per month Plaintiff would be incapacitated reflects that his opinion was based on his lengthy history of treatment of Plaintiff

and "the pattern that [he had] observed over the years." Tr. 255. This assessment is no more and

no less than the type of medical opinion proffered by treating physicians in a multitude of social

security cases.  It is a combination of objective and subjective judgments based upon an

understanding of a Plaintiff's medical history and circumstance. This "greater opportunity to

know and observe a patient as an individual," is why special weight is afforded to a treating

physician's opinion. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987).

As discussed above, Dr. LeBow had a long-standing treatment history with Plaintiff and I

have concluded that his opinions were not inconsistent with his treatment notes. The non-

examining, State agency physician's opinion that Dr. LeBow's opinion was speculative does not,

on its own, constitute substantial evidence. Lester, 81 F.3d at 830–31. Thus, the ALJ's reliance

on her characterization of Dr. LeBow's opinion as "speculative" was neither a clear and

convincing nor a specific and legitimate reason for rejecting that opinion.

## III. Lay Witness Evidence

Plaintiff's mother, Christine Beights, completed a Third Party Function Report. She

wrote that Plaintiff can only sit and stand for short periods of time, can lift very little weight and

finds walking painful. Tr. 206. Ms. Beights, who lives with Plaintiff, wrote that Plaintiff does

light housework depending on how her back feels and that Ms. Beights and Plaintiff's husband

pick up what Plaintiff cannot do. Tr. 207. She wrote that Plaintiff is in pain every day. Tr. 213.

The ALJ discounted Ms. Beights' report because it "largely mirrors the claimant's self-

report, which I do not find entirely credible." Tr. 18. Plaintiff argues that this was not a valid

reason since the ALJ erred in rejecting Plaintiff's testimony. I agree.

Lay testimony as to a claimant's symptoms or as to how an impairment affects a

claimant's ability to work is competent evidence which an ALJ must consider. Molina v. Astrue,

674 F.3d 1104, 1114 (9th Cir.2012) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1995); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)). An ALJ who rejects the testimony of lay witnesses must provide reasons for doing so that are "germane" as to each witness. Id.

Ms. Beights' statements, as the ALJ noted, were consistent with the alleged severity of Plaintiff's limitations. In addition, Ms. Beights' lived with Plaintiff and had the opportunity to observe her daily activities firsthand. Given my conclusion that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's own subjective complaints, it follows that, in the absence of additional support, the ALJ also erred in rejecting the lay witness evidence.

## IV. Step Five Findings

In order to be accurate, an ALJ's vocational hypothetical presented to a VE must set out all of a claimant's impairments and limitations. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984). The ALJ's depiction of a claimant's limitations must be "accurate, detailed, and supported by the medical record." Tackett, 180 F.3d at 1101. If the assumptions set out in the hypothetical are not supported by the record, a VE's conclusion that a claimant can work does not have evidentiary value. Gallant, 753 F.2d at 1456. If the ALJ has applied the proper legal standard and the decision is supported by substantial evidence, the RFC assessment must be affirmed. E.g., Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.2005).

Here, based on the testimony of the VE, the ALJ determined that Plaintiff was capable of performing "other work" that exists in significant numbers in the national economy. However, the VE testified that a person off task by ten percent or more would not maintain employment and absences of two or more days a month, if chronic, would preclude employment. Tr. 73. The VE also testified and that employers do not customarily allow employees to recline outside of

scheduled breaks during the workday. Thus, if Plaintiff and Dr. LeBow are credited, the ALJ would be required to find Plaintiff disabled.

**V. <u>Remand</u>**

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. <u>See</u>, <u>e.g.</u>, <u>Stone v. Heckler</u>, 761 F.2d 530, 533 (9th Cir.1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted the court follows the "three-part credit-as-true standard." <u>Garrison v. Colvin</u>, 759 F3d 995, 1020 (9th Cir. 2014). Under this standard the court considers whether: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant's testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." <u>Id</u>. (<u>citing</u> <u>Ryan v. Comm'r Soc. Sec.</u>, 528 F.3d 1194, 1202 (9th Cir. 2008))

On the first factor, there is no need to further develop the record. The Commissioner argues that further proceedings would serve the "useful purpose" of allowing the ALJ to resolve conflicts between Plaintiff's testimony and the opinions of the State agency non-examining physicians. The Ninth Circuit has noted that resolving conflicts and ambiguities in the record is the ALJ's responsibility. <u>E.g.</u>, <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir.1989). However, it has also concluded that allowing the ALJ to revisit medical opinions and testimony she rejected for legally insufficient reasons does not qualify as a remand for a "useful purpose."

See Garrison, 759 F.3d at 1021 (citing Benecke v. Barnhart, 379 F.3d 587, 595(9th Cir. 2004))
("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win;
tails, let's play again' system of disability benefits adjudication."). The ALJ, here, improperly
rejected Plaintiff's testimony and Dr. LeBow's opinion. Furthermore, although she considered
the opinions of the State agency physicians, she gave those opinions only "partial weight." Under
these circumstances, additional administrative proceedings would serve no "useful purpose."

On the second factor, the court has concluded that the ALJ failed to provide legally
sufficient reasons to reject Dr. LeBow's opinion and Plaintiff's subjective complaints.

Third, if the discredited evidence were credited as true, the ALJ would be required to find
Plaintiff disabled on remand because the vocational expert testified that a person with the
limitations that Dr. LeBow identified and to which Plaintiff testified, would be incapable of
sustained full-time work. Tr. 73-75.

If a court concludes, as in this case, that a Plaintiff meets the three criteria of the credit-
as-true standard, the improperly discredited evidence is credited as true and remand for an award
of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the
claimant is, in fact, disabled with the meaning of the Social Security Act." Garrison, 759 F.3d at
1020–1021 (citations omitted).

Considering the record as a whole, I conclude that there is no reason for serious doubt as
to whether Plaintiff is disabled. On the record before the Court, Dr. LeBow's opinions and
Plaintiff's subjective complaints should be credited as true and the case should be remanded for
an award of benefits.

## Conclusion

For the reasons set out above, a judgment should be entered REVERSING the

FINDINGS AND RECOMMENDATION – 20

Commissioner's decision and REMANDING this action to the Agency for an immediate award of benefits.

### **<u>Scheduling Order</u>**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due December 30, 2016.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 13th day of December, 2016.


_____/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION – 21